IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN STEVEN TEAGUE | : | Case No. 1:21-CV-318 |
| | : | |
| Plaintiff, | : | Judge Barrett |
| | : | |
| v. | : | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANTS TO RESPOND TO DISCOVERY AND PROVIDE DEPOSITION TESTIMONY (Doc. #19, 21); AND MEMORANDUM IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER (Doc. #21)** |
| | : | |
| JAY NOBLE, *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## I.  INTRODUCTION

Defendants Jay Noble and the Village of Bethel's Memorandum in Opposition to Plaintiff's Motion to Compel and Motion for Protective Order ("Memorandum in Opposition") (Doc. #21) serves merely to make Plaintiff's point.  Defendants make broad, sweeping assertions of various privileges and proclaim that discovery should be "off limits" based upon their mere assertion of privilege, *without any proof whatsoever* that a specific privilege actually applies to a specific document, interrogatory response, or topic of deposition questioning, all in a blatant effort to simply block Plaintiff from obtaining discovery which is highly relevant to his claims.  In fact, *Defendants admit they still have not even provided a privilege log* to Plaintiff.  This Court should find that Defendants have, accordingly, waived the asserted privileges.  *See, e.g, Casale v. Nationwide Children's Hosp.,* No. 2:11-CV-1124, 2013 WL 12203243 (S.D. Ohio Sept. 13, 2013) (finding waiver of privilege due to failure to submit adequate privilege log).  Alternatively, at a minimum, this Court should find that Defendants have failed to meet their burden of demonstrating each element of their asserted privileges with competent evidence.  *McCall v. Procter & Gamble*

1

*Co.*, No. 1:17-CV-406, 2019 WL 3997375, at *2, and fn 4 (S.D. Ohio Aug. 22, 2019). Defendants cannot possibly succeed in the assertion of a claim of privilege without even disclosing the information required by the Civil Rules in a privilege log to permit Plaintiff and the Court to evaluate it.

Defendants' strategy in this litigation is to prevent discovery of their wrongdoing with sweeping and improper assertions of privilege and corresponding instructions to witnesses to refuse to answer deposition questioning. As set forth in detail in Plaintiff's Motion to Compel, among other things, Plaintiff Teague alleges in his Complaint that Village Council and Mayor Noble violated the Open Meetings Act and deprived him of his constitutional rights by making decisions to place him on leave and terminate his employment without following the process and procedures required by Ohio R.C. §737.171. The statute protects a Chief of Police from suspension or removal from his/her position without cause, and requires a public hearing on "charges" to suspend or remove a Chief of Police from his position, at which the Chief of Police is permitted to question witnesses, present his/her side and otherwise respond to the charges, following which Council is to vote upon the charges and any action to be taken on them. *See* R.C. §737.171. In violation of R.C. §737.171 and Ohio's Open Meetings Act, and prior to charges even being presented to Plaintiff Teague, Defendants secretly decided to suspend and terminate Plaintiff Teague.

Defendants state in their Memorandum in Opposition that "there is nothing in the record to suggest R.C. 737.171 was violated through executive session." Memo. Opp. P. 13. However, proof of these violations is in the very "script" read to Plaintiff Teague when he was suspended on January 8, 2021, a month before "charges" were presented to him or the first day of the sham "hearing" held:

> As of immediately, today January 8, 2021
>
> - You are being put on paid administrative leave, pending your termination from the Village
> - The members of council and I have lost confidence in your ability to lead the Bethel Police Department
> - I have documented numerous incidents in which you have failed to effectively lead the department, failed to follow proper procedures, and failed to place the interests of the Village first.
> - The draft report that I have reviewed from Chief Hughes supports the Village's determination that you should not continue to lead the department

Compl., ¶52. There was no public, open meeting of Council where this subject was discussed or a determination made prior to the date this script was read to Plaintiff Teague on January 8, 2021. However, we have now learned that Council held various executive sessions prior to this date, where the topic must have necessarily been discussed and the determinations described in the January 8, 2021 script made. Plaintiff's attainment of further evidence has been blocked by Defendants' assertions of baseless objections, assertions of a purported "executive session privilege" as to all information related to these topics, and instructions to witnesses to refuse to answer deposition questions posed to them about the script and the "determinations" it states were made by Village Council regarding Plaintiff's continued employment as Chief of Police.

Defendants should be compelled to immediately provide complete responses to the discovery served upon them and to respond to the questions posed to them during depositions. Defendants' Motion for Protective Order should be denied for the same reasons that Plaintiff's Motion to Compel should be granted.

## II. ARGUMENT

### A. This Court Should Find Defendants Have Waived the Asserted Privileges; Defendants Admit They *Still* Have Not Provided a Privilege Log

Plaintiff served his written discovery requests upon Defendants *six months ago* on September 8, 2021. *See* Mot. Compel, at Ex. 1. Defendants admit in their Memorandum in

3

Opposition that they *still have not provided a privilege log* to Plaintiff. Defendants have for months been blocking and continue to block significant discovery into central areas of inquiry in this case through their sweeping and unsupported assertions of privilege. Until recently, following the initial depositions of Village Council members where Defendants' counsel instructed the witnesses to refuse to answer almost every question posed to them relevant to this litigation, Defendants refused to even identify the existence or dates of the various executive sessions upon which their "executive session privilege" assertions were based.

Civil Rule 26(b)(5) and Local Rule 26.1 require a privilege log when a party withholds information otherwise discoverable on the basis of an alleged privilege. This is the proper procedure to initiate a claim of privilege. Boilerplate objections on the basis of privilege will not suffice. *Casale*, 2013 WL 12203243, at *2. Defendants have failed to provide a privilege log, even in response to Plaintiff's Motion to Compel. This Court can and should find that Defendants have waived any claim of privilege due to their failure to follow the requisite procedure for asserting it. *See id.* (finding that Defendants had waived asserted privileges due to failure to provide an adequate privilege log and ordering immediate production of withheld documents).

**B. Defendants Have the Burden of Establishing a Claim of Privilege with Competent Evidence, and Have Failed to Do So**

Even if the Court does not find Defendants have waived the asserted privileges, it should nonetheless find that Defendants have failed to meet their burden of establishing them.

Plaintiff is entitled to obtain discovery regarding nonprivileged matters, and it is well-established that when a party withholds discovery on the basis of privilege, "[t]he burden of establishing a claim of privilege rests with the party asserting it." *McCall*, 2019 WL 3997375, at *2. If a claim of privilege is challenged, the party asserting it must establish the factual predicate and each element by competent evidence. *Id.* General objections and assertions will not suffice.

4

> Competent evidence can include sworn statements in affidavits, depositions, and interrogatory answers. *Meadows v. Uniglobe Courier Serv. Inc.*, No. 5:08-CV-2530, 2009 WL 10719820, at *3 (N.D. Ohio July 29, 2009); *Amway Corp. v. Procter & Gamble Co.*, No. 1:98-CV-726, 2001 WL 1818698, at *4 (W.D. Mich. Apr. 3, 2001). **It cannot include conclusory assertions in legal briefs, privilege logs, or emails.** *See Cooey*, 269 F.R.D. at 649; *Comtide*, 2010 WL 4117552, at *5 ("[A] privilege log is not itself evidence of the existence of a privilege;" thus, a claim of privilege "cannot be sustained purely on the basis of unsworn information in a privilege log.").

*Id.* at fn.4 (emphasis added).

Here, it is Defendants' burden to specifically identify the privilege being asserting with respect to each document or item of information withheld, the factual predicate, and each element of the privilege by competent evidence. Defendants have not done so and instead continue to make improper sweeping assertions of privilege. Defendants cannot succeed in asserting privilege and withholding discovery under such circumstances.

### C. Defendants Should be Compelled to Testify Regarding Their Defenses

In response to Plaintiff's Motion to Compel Defendants to respond to deposition questioning regarding their intention of asserting a defense of "advice of counsel" in this litigation, Defendants argue Plaintiff may not conduct discovery of Defendants' "legal strategy." They further state that they do not yet know if they will raise the defense of "advice of counsel" in the case. Memo. Opp., p. 6.

It is beyond time for Defendants to make a decision, and Plaintiff is absolutely permitted to take discovery on the defenses Defendants seek to assert in this litigation. During his deposition, counsel for Plaintiff specifically asked Defendant Noble whether he intended to assert the affirmative defense of "advice of counsel" in the case. Defendants' counsel objected and instructed him not to answer, arguing that this particular affirmative defense was work product. *See* Mot. Compel, at Ex. 2, Excerpts of Depo. of Noble. Plaintiff's counsel did not ask Defendant

5

Noble to reveal his conversation with his attorney; he merely asked if he intended to assert the affirmative defense. Plaintiff is entitled to know this and conduct discovery on all defenses Defendants intend to assert, and, under the circumstances presented in this case and due to the claims being asserted, especially those against Mayor Noble, there is a strong possibility Defendants may seek to utilize this defense to attempt to avoid findings of malice and punitive damages. As set forth in Plaintiff's Motion to Compel, whether such defense is going to be asserted in this case will dramatically affect the scope of any privilege and the scope of discovery in this case because the defense of "advice of counsel" acts as a waiver of the attorney-client privilege. We are now nearly a year into this litigation. The parties and the Court need to know the defenses, and corresponding scope of asserted privileges, now so that discovery may be completed as efficiently as possible. Otherwise, everyone will be repeating this entire discovery process if Defendants decide down the road to assert "advice of counsel" as a defense.

**D. Defendants Are Not Entitled to the Blanket Privileges They Assert with Respect to the Executive Sessions of Village Council**

As an initial matter, although Defendants have now disclosed the existence and dates of five executive sessions, and the exemption to the Open Meetings Act cited to go into the executive session, they have refused to provide any additional information, including the persons in attendance at each meeting (which is relevant to the existence and waiver of any asserted privilege), or the actual topics of discussion so that they may be compared to the exemption utilized to determine if an exemption to the Opens Meetings Act was properly invoked and maintained and whether any privilege could possibly apply to the discussions. Moreover, Defendants have failed to provide any minutes or other documents from these executive sessions, or a privilege log which describes them. They nonetheless declare everything relating to or discussed during these executive sessions to be privileged. Defendants are wrong.

6

1. **<u>The Attorney-Client Privilege Does Not Apply and Does Not Provide a Blanket Exemption from Discovery Merely Because the Village Solicitor May Have Been in the Room</u>**

Although they have failed to identify the persons present[1], Defendants assert in their Memorandum in Opposition that the City Solicitor was present at the executive sessions and at other meetings. Defendants assert a blanket attorney-client privilege for the entirety of each executive session and all other meetings where legal counsel was present, as well as all documents and information related to any topic or facts purportedly discussed in executive session. *See* Memo. Opp., pp. 6-8; *see also* Excerpts of depo testimony of Council members, attached as Exhibits 3, 4 to Mot. Compel; *see also* Mot. Compel, pp. 16-21. As demonstrated by the deposition excerpts attached to Plaintiff's Motion to Compel, during depositions, Counsel for Defendants refused to permit deponents to state if an executive session had, in fact, occurred, the date of the alleged executive session, the exemption utilized or purpose for going into executive session, or the topics discussed and whether the topics discussed went beyond the exemption utilized. They further refused to permit council member witnesses to testify about their own knowledge (or even whether the knowledge came from executive session discussion), the underlying facts, or their involvement in investigations and actions which took place prior to Plaintiff being suspended and then terminated, asserting that because such topics or facts may have been discussed in executive session, the entire topic was essentially "off limits" in discovery. *See* Mot. Compel, at Exs. 3, 4.

In their Memorandum in Opposition, Defendants state the general legal proposition that governmental entities, like corporations, enjoy the attorney-client privilege. *See id.* at pp. 7-8. No one disputes that this general proposition of law may be true in appropriate circumstances. The

---

[1] Plaintiff suspects Defendants have refused to identify the persons present at the meetings because numerous persons other than members of Village Council were present (including, for example, Mayor Noble, Travis Dotson the Village Administrator, Bill Gilpin the Village Fiscal Officer, and potentially others), which would preclude application of the attorney-client privilege as explained below.

7

problem with Defendants' assertion is, again, their absolute and utter failure to meet their burden of establishing that the attorney-client privilege applies to a particular meeting, communication or document at issue in this case. Moreover, even if a privilege did apply to certain communications, it does not provide a sweeping blanket exemption from discovery for the entire topic and underlying facts.

Even assuming the Village Solicitor was present at each executive session, it is well established that the attorney-client privilege does not apply merely because counsel was in the room. The court in *Kamenski v. Wellington Exempted Vill. Sch.*, No. 1:14-CV-01589, 2016 WL 1732872, at *2–4 (N.D. Ohio May 2, 2016), rejected the identical argument being posited by Defendants here:

> The essence of Defendants' argument is that, because counsel was present at the July 16, 2013, executive session, the purpose of which Defendants assert was to discuss Kamenski's pending EEOC charge and the upcoming mediation regarding that charge, all discussions occurring during that executive session are subject to the attorney-client privilege. However, the attorney-client privilege protects only confidential disclosures made for the purpose of obtaining legal advice. *Reed*, 134 F.3d at 355-356. Thus, "the mere presence of counsel 'in the room' is insufficient to invoke the attorney-client privilege."

*Id.* at *5; *see also Maddox v. Greene Cty. Bd. of Commrs.,* 2014-Ohio-1541, ¶ 7 (presence of counsel in a room is insufficient to invoke attorney-client privilege; there is a distinction between a conference with counsel for the purpose of obtaining legal advice, and a conference at which counsel is present).

As even Defendants note in their Memorandum in Opposition, there are elements that must be established to assert the attorney-client privilege with respect to a particular communication. *See* Memo. Opp., p. 7, citing *Fausek v. White,* 965 F.2d 126, 129 (6th Cir. 1992)[2]. Defendants do

---

[2]The Sixth Circuit stated in Fausek:

8

not even attempt to meet their burden to establish those elements with competent evidence. *McCall*, 2019 WL 3997375, at *2, and fn4.

Moreover, while governmental entities may enjoy the attorney-client privilege, application of the privilege analysis is more exacting due to its conflict with the strong public interest in open and honest government, the privilege does not necessarily apply to all meetings where legal discussions are had, and may not apply at all or be waived by the presence of other governmental employees or "non-clients." *See Reed v. Baxter*, 134 F.3d 351 (6th Cir. 1998) (attorney-client privilege did not apply to discussion held at meeting where city attorney, two City Council members, City manager, and fire chief were present). In *Reed*, which is analogous to the situation presented here, the plaintiffs filed an employment discrimination lawsuit against the City and its fire chief relating to their promotion practices within the fire department. *Id.* At issue was a meeting held with the City attorney, two members of City Council, the City Manager, and the fire chief to discuss the promotion at issue, during which the plaintiffs contended the defendants conceded that the promotion had been made based upon race. *Id.* at 353-54. The City asserted

---

The attorney-client privilege permitting a witness to withhold testimony is an exception to the general rule that a court is entitled to every witness's testimony and that witnesses fully disclose information known to them when called to testify. Thus, it should be construed narrowly. *Humphreys, Hutcheson and Moseley v. Donovan,* 755 F.2d 1211, 1219 (6th Cir.1985). In *Humphreys, Hutcheson,* we described the elements of the privilege:

> This court set forth the essential elements of the attorney-client privilege in *United States v. Goldfarb,* 328 F.2d 280 (6th Cir.), *cert. denied,* 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964), as follows:
> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

\*\*\*

Although important, the attorney-client privilege is not absolute; it applies only to the extent that it serves the "broader public interests."

965 F.2d 126, 129.

9

attorney-client privilege as to the discussion held at the meeting. *Id.* at 354. The court rejected the asserted privilege, and stated as follows with respect to application of the privilege for governmental entities:

> Assuming that the privilege applies, "[i]t is appropriate to recognize a privilege 'only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining truth.' " . . . Guided by this principle, courts and commentators have cautioned against broadly applying the privilege to governmental entities. . . The recognition of a governmental attorney-client privilege imposes the same costs as are imposed in the application of the corporate privilege, but with an added disadvantage. The governmental privilege stands squarely in conflict with the strong public interest in open and honest government.

*Id.* at 356.

The meeting at issue in *Reed* was called by a City Council member to inquire about the promotion as a result of complaints he had received. The interests of the Council members were not necessarily the same as those of the other City executives (the City manager and the Fire Chief), and this potential divergence of interests precluded a finding that privilege applied. The court stated:

> This divergence precludes us from concluding that Councilmen Ross and Bratcher acted as clients of the city's lawyer during the December 1992 meeting. City Manager Haley and [Fire] Chief Baxter participated in the discussion as the agents of the city responsible for making the promotion that led to this lawsuit. As fire chief, Baxter was the person ultimately responsible for devising and applying the Department's promotional policy. Exercising the discretion afforded him by the city charter, Haley accepted Baxter's recommendation and promoted Young. Thus, it is the conduct of Baxter and Haley that threatens to expose the city to liability.

*Id.* at 357–58. The court found that the council members did not attend the meeting as clients of the City attorney, and the discussion was not held in confidence for purposes of the attorney-client privilege. *Id.* at 358.

The same analysis applies here. It is, at least in part, Defendant Noble's actions as Mayor that have exposed the Village to liability. To the extent Defendant Noble and other Village

executives or employees were present at executive sessions and other meetings where Plaintiff's Teague's suspension, termination or claims were discussed, the disparity of interests and presence of additional persons other than members of Council precludes a finding of attorney-client privilege.

In addition, even where it applies, the attorney-client privilege protects only communications between a client and the attorney for the purpose of obtaining legal advice; *it does not protect disclosure of underlying facts and it is not a blanket exemption from discovery* on all topics which may have been the subject of an attorney-client communication. The United States Supreme Court has stated:

> The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:
>> "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

*Upjohn Co. v. United States*, 449 U.S. 383, 395–96, 101 S. Ct. 677, 685–86, 66 L. Ed. 2d 584 (1981); *United States v. Crane*, 840 F.2d 18 (6th Cir. 1988) ("The attorney-client privilege extends to communications between the attorney and client but not to the underlying facts. . . Because the privilege operates to suppress the truth, it should be narrowly construed."). Accordingly, the objections and instructions not to answer of Defendants' counsel during depositions of Village Council Members were patently improper. *See* Mot. Compel, pp. 16-21, and Ex. 3, 4.

Moreover, as discussed in Plaintiff's Motion to Compel, because the Village has failed to demonstrate that the executive sessions were properly closed under an exemption to Ohio's Open

Meetings Act, then the communications between City Council and their legal counsel would not be protected nor privileged in any event. *See In re Grand Jury Subpoena*, 886 F.2d 135, 138–39 (6th Cir. 1989) ("On remand, the district court should determine whether the 1986 sessions were properly closed under the Open Meetings Act. If they were not properly closed, then the communication between City Council and corporation counsel at those sessions were not confidential and therefore not privileged.")

Finally, while Defendants state in their Memorandum in Opposition that Plaintiff has not argued that the attorney-client privilege has been waived, the reason for this is because *Defendants have refused to provide any information* about these meetings. Privilege may very well have been waived, if it ever applied in the first place, if persons other than counsel and the Village Solicitor were present or if the discussions were disclosed outside of the meetings. However, Defendants have failed to identify the persons present or topics of discussion, among other things, to permit any meaningful evaluation of the claimed privilege.

    **2. There is No "Executive Session Privilege"**

As predicted, Defendants asks this Court to find that an "executive session privilege" exists based upon the state law exemptions to Ohio's Open Meetings Act found in R.C. §121.22(G)(1) and (G)(3), and the provisions of R.C. §102.03(B). This precise argument was rejected by the Court in *Kamenski v. Wellington Exempted Vill. Sch.*, No. 1:14-CV-01589, 2016 WL 1732872 (N.D. Ohio May 2, 2016), and *McComas v. Bd. of Educ. Rock Hill Loc. Sch. Dist.*, No. 1:07-CV-573, 2009 WL 10709695 (S.D. Ohio May 11, 2009); *see also Springfield Local School Dist. Bd. of Edn v. Ohio Assoc. of Public School Employees, Local 530*, 106 Ohio App.3d 855, 868 (Ohio App. Ct. 1995). A statutory exemption to the open meeting requirement of Ohio's Open Meetings Act does not equate to a privilege. *See id.*

As further anticipated, Defendants rely upon the Sixth Circuit's decision in *Humphries v. Chicarelli*, 554 F. App'x 401, (Mem)–402 (6th Cir. 2014), which as an unpublished opinion is not binding, in support of its assertion of an "executive session privilege." They further attach Judge Dlott's trial court decision in the case, which was affirmed by the Sixth Circuit. *See Humphries v. Chicarelli,* Case No. 1:10-cv-749, Order Granting Motion in Limine and Motion to Strike, attached to Defs' Memo. Opp at Ex. 1. However, Judge Dlott's decision in *Humphries* supports Plaintiff's position here. Indeed, it <u>does</u> <u>not</u> create nor recognize an "executive session privilege." *See id.* Rather, Judge Dlott's decision makes clear that the decision was based upon application of the attorney-client privilege; there was no "executive session privilege" recognized or applied by Judge Dlott. *See id.* at pp. 5-6.

In *Humphries,* two meetings were at issue. Both were held for the specific purpose of obtaining legal advice from the City attorney. *See id.* And notably, unlike Defendants here, the city council member defendant in *Humphries* submitted an affidavit to the Court which explained that the meeting with the City's attorney held in executive session had been called to seek specific legal advice. The court noted that there was no evidence that the Council members engaged in any official business, deliberations, or took any action during the subject meetings, all of which would have implicated the open meetings requirement of the Ohio Open Meetings Act. *Id.* at 5. In other words, a governmental entity is permitted to meet with its legal counsel for the purpose of obtaining legal advice, and does not lose the protection of the attorney-client privilege simply because the meeting was held in executive session. *See id.* at pp. 5-7. But the decision does not stand for the opposite proposition for which Defendants propose here which is that the mere fact of an executive session creates a stand-alone executive session privilege. There is no executive session privilege.

Indeed, when Judge Dlott directly addressed the question of the existence of a purported "executive session privilege" based upon the exemptions contained in Ohio's Open Meetings Act in *McComas v. Bd. of Educ. Rock Hill Loc. Sch. Dist.*, No. 1:07-CV-573, 2009 WL 10709695, she unequivocally found that no such privilege exists for discussions held in executive session. *Id.* at *2 (emphasis added) (granting plaintiff's motion to compel defendants to testify on issues discussed and deliberations among board members, including in executive session). The Court similarly held that R.C. 102.03(B) did not create a privilege and should not act as a bar to discovery. *Id.* at *3.

Defendants seek to discredit *McComas* as an "outdated" decision. Memo. Opp., p 10. In truth, however, it is the decision from Judge Dlott which directly addresses the issue at hand. And *Humphries* and *McComas* do not conflict. It is clear from these decisions that no "executive session privilege" exists, but meetings demonstrated through competent evidence to have been held by council members with their attorney for the specific purpose of seeking legal advice may be protected by the attorney client privilege.

While federal privilege law applies in federal court, state common law may be considered, and in that regard, the Ohio Supreme Court's decision in *Henneman v. City of Toledo*, 35 Ohio St. 3d 241, 244–45, 520 N.E.2d 207, 210–11 (1988), is instructive. There, the court found that an exemption from Ohio's public records law did not equate to a privilege or exemption from discovery in litigation. Similar to the Open Meetings Act at issue in this litigation, the public records act at issue in *Henneman* provides certain exemptions from public records disclosures. The court found that the exemption in the statute did not protect the records from discovery in litigation. *Id.* at 244–45. This holding has been extended by Ohio courts to discovery of confidential records and discussions held in executive session. *See, e.g., Wessell Generations, Inc.*

14

*v. Bonnifield*, 2011-Ohio-1294, ¶¶ 25-28; *Springfield*, 106 Ohio App. 3d 855, 868–70 (1995). The Ohio legislature knows how to codify a privilege where it intends one to exist. *See, e.g.,* R.C. §2317.02. No where has it done so with respect to communications and discussions held in executive session. Defendants do not even address this Ohio Supreme Court precedent or lack of statutory codification of an executive session privilege.

Finally, for the reasons stated by Plaintiff in his Motion to Compel, even if, *arguendo*, there were an "executive session privilege," Defendants have again failed to demonstrate its proper invocation through competent evidence. *See McCall, supra.;* Mot. Compel, at pp. 14-23. Moreover, any such privilege would not provide the broad shield from discovery for which Defendants seek to use it.

E. **Defendants Should be Compelled to Provide Documents, Information and Deposition Testimony Regarding Chief Hughes**

Interestingly, Defendants assert that all of their communications, documents, information and even deposition testimony sought by Plaintiff from members of Village Council regarding Chief Scott Hughes, other than the final report they have decided to provide, is protected by the work product doctrine. *See* Memo. Opp, p. 15. Chief Hughes was purportedly retained by the Village of Bethel to conduct various "independent" investigations into Plaintiff beginning in mid-2020, months prior to the Mayor placing Plaintiff on leave or presenting the Charges, and, therefore, certainly prior to any reasonably anticipated litigation.

The work product doctrine has been described as follows:

> Work product is protected by Rule 26(b)(3)[30] and Rule 26(b) (4)(B)[31], Fed.R.Civ.P., respectively. Work product is a protection, not a privilege. It is intended to protect the adversary system. As Justice Jackson said in *Hickman v. Taylor,* 329 U.S. 495, 516, 67 S.Ct. 385, 91 L.Ed. 451 (1947), "[d]iscovery was hardly intended to enable a learned profession to perform ... on wits borrowed from the adversary." **It applies only to "documents and tangible things," Rule 26(b)(3), not to a witness's testimony.**

15

> When a claim of work product protection is made, the initial burden is on the party seeking discovery to show that the material requested is relevant within the meaning of Rule 26(b)(1), Fed.R.Civ.P.[32] Once that showing is made, **the burden shifts to the party asserting work product "to show that the material was 'prepared in anticipation of litigation or for trial' by or for that party or that party's representative, including that party's attorney, consultant, surety, indemnitor, insurer or agent."[33] The question is "whether, in light of the nature of the document and the factual situation in the particular case, the documents can fairly be said to have been prepared or obtained because of the prospect of litigation**."[34]

*Williams v. Duke Energy Corp.*, No. 1:08-CV-00046, 2014 WL 3895227, at *5 (S.D. Ohio Aug. 8, 2014).

Here, Plaintiff has demonstrated that the requested documents, information and testimony are relevant to this case. Chief Hughes' investigations were, at least in part, the basis of Defendants' decision to suspend and terminate Plaintiff and file administrative charges against him. Therefore, it is Defendants' burden to establish that the work product protection applies, and Defendants have again failed to make any effort to meet their burden. Chief Hughes was retained to conduct his "independent" investigations more than 6 months prior to any action even being taken by Defendants against Plaintiff. How could the requested documents and information relating to these purported "independent" investigations possibly be "in anticipation of litigation"? If Chief Hughes was instead retained in mid-2020 "in anticipation of litigation," then such action would support Plaintiff's assertion that the entire "hearing" process initiated by Defendants with the filing of the Charges in February 2021 was a sham as Defendants had already made their decision to terminate Plaintiff Teague.

Moreover, Defendants have not even disclosed through a privilege log what it is that they are withholding. Again, such conduct is improper and they cannot be found to have met their burden of demonstrating that the work product protection applies under such circumstances. In addition, even if the protection applied, it applies only to documents, not to a witness's testimony.

16

*See id.* However, Defendants have instructed witnesses to refuse to answer question posed during depositions regarding Chief Hughes, such as the following:

> Q. Okay. Were you part of the process of deciding that this investigation should be done by Chief Hughes?
> MS. BARBIERE: I'm going to object. If that conversation, any of that, occurred during executive session or in conversations with your counsel, I'm going to instruct you not to answer that.
> If that occurred outside of your executive session, you may answer.
> A. No knowledge outside of that.

> Coogan depo., p. 20.

> * * *

> Q. Okay. Do you know what executive session this retention of Chief Hughes, for this report, was done at, which date?
> MS. BARBIERE: I'm going to --
> MS. SUPINGER: Objection.
> MS. BARBIERE: I'm going to object, and instruct you not to answer that.

> Coogan depo., p. 20

> * * *

> Q. Why was this investigation requested by Bethel?
> MS. BARBIERE: I'm going to say, if that discussion was in executive session, don't answer.
> MR. LUNDRIGAN: Well, how could that --
> MS. BARBIERE: If you --
> MR. LUNDRIGAN: -- be? Because she just said that this didn't happen at a time when any executive session was called.

> Coogan depo., pp. 26-31.

This conduct is unsupportable and improper even if the work product protection applies.

    F. **Defendants Should Be Compelled to Immediately Produce All Emails, Text Messages, Phone Log and Any Other Information Contained on the Cell Phone of Plaintiff**

Last week, Defendants made a production of emails and text messages from the former cell phone of Plaintiff. However, the production does not appear to be complete. For example, there do not appear to be any text messages produced for the time period prior to June 2021. The relevant time period here is January 2020 to April 2021, which means there are no text messages produced

17

for any of this relevant period. Moreover, it does not appear that a full call log has been produced. As such, these requests are still at issue for purposes of Plaintiff's Motion to Compel.

### G. Defendants Should be Compelled to Provide Complete Responses to the Additional Interrogatories and Document Requests Identified by Plaintiff

Moreover, all of the additional interrogatory responses and documents requests set forth in Plaintiff's Motion to Compel at pages 24-26 remain outstanding. No further information or documents have been produced by Defendants in response to these discovery requests.

### III. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court issue an order compelling Defendants to provide complete responses to Plaintiff's written discovery requests, as well as the unimpeded deposition testimony of the witnesses requested by Plaintiff on all meetings, communications, discussions and other subjects relevant to this matter. In addition, Defendants' Motion for Protective Order lacks basis and should be denied for the same reasons Plaintiff's Motion to Compel should be granted.

Dated: March 11, 2022

Respectfully submitted,

   s/Nicole M. Lundrigan
W. Kelly Lundrigan (0059211)
Nicole M. Lundrigan (0075146)
LUNDRIGAN LAW GROUP CO, LPA
1080 Nimitzview Drive, Suite 402
Cincinnati, Ohio 45230
Phone (513) 813-7597
Fax (513) 826-9335
klundrigan@lundrigan-law.com
nlundrigan@lundrigan-law.com
*Attorneys for Plaintiff*

**Certificate of Service**

    The undersigned hereby certifies that a copy of the foregoing was filed with the Court's electronic filing service and served upon counsel for all parties via the electronic filing system on this 11th day of March, 2022.

                                                                                 *s/Nicole M. Lundrigan*